UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JUAN A. CARDENAS and FLORENCIA HERRERA de CARDENAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICREDIT FINANCIAL SERVICES INC., and DOES 1-10, inclusive,<br><br>Defendants. | Case No: C 09-04978 SBA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Docket 9, 27 |

Plaintiffs Juan A. Cardenas and his wife, Florencia Herrera de Cardenas, allege that Defendant AmeriCredit Financial Services, Inc. ("AmeriCredit"), failed to provide Mr. Cardenas with proper notice of his rights in connection with the financing of his car, ostensibly in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. AmeriCredit contends that Plaintiffs' claims are subject to arbitration, and have filed a Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Proceedings. Docket 9. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

#### 1. Mr. Cardenas' Purchase of the Toyota Scion

On December 11 2005, Plaintiff Juan A. Cardenas ("Mr. Cardenas"), a resident of Daly City, California, went to a local Toyota dealership looking to purchase an automobile. Cardenas Decl. ¶ 1. Mr. Cardenas is a native Spanish speaker who has a limited command of the English language. Id. ¶ 2. A Spanish-speaking sales representative met Mr. Cardenas, and suggested that he purchase a Toyota Scion. Id. After a short while, the salesperson placed Mr. Cardenas in a room, where he was met by a "finance guy who spoke only English." Id. ¶ 3. The "finance guy" queried Mr. Cardenas regarding his income and expenses, and appeared to enter his responses into a computer. Id. The representative informed him that Toyota Finance had rejected his credit application, but that he could obtain financing through AmeriCredit. Id. ¶ 4. After printing out the Installment Agreement ("Agreement"), the representative instructed Mr. Cardenas where to sign, allegedly without explaining the import of Agreement's provisions. Id. ¶ 5. The total cash price of the car was $23,724.39. He financed the entire purchase price which he agreed to repay in seventy-two equal monthly installments of $527.77. Including financing costs, the total cost of the new car was $37,999.44. Paterson Decl. Ex. A. Although Mr. Cardenas signed the Agreement, his wife, Plaintiff Florencia Herrera de Cardenas ("Ms. Cardenas"), did not.[1] After Mr. Cardenas purchased the vehicle, the dealership provided him with a Spanish translation of the Agreement. Cardenas Decl. ¶ 8. However, he did not read the Agreement until he returned home. Id. There is no indication in the record that he notified the dealership or AmeriCredit of any concerns regarding the Agreement once he had read the Spanish version of the document.

---

[1] Plaintiffs have taken the position that even if Mr. Cardenas were subject to the arbitration clause in the Agreement, Ms. Cardenas is not because she did not sign the Agreement. In light of the Court's conclusion that the arbitration clause is inapplicable to a UCL claim for injunctive relief, this issue is moot. As to AmeriCredit's contention that Ms. Cardenas lacks standing, such argument is more appropriately raised through a motion to dismiss or motion for summary judgment.

**2.     Summary of the Installment Agreement**

The first page of the Agreement contains the following "Notice to buyer," which advises the buyer that in the event his vehicle is repossessed for non-payment, he could be held liable for the entire unpaid indebtedness. This notice states:

> (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) <u>If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement</u>.

Id. at 1 (emphasis added).

Section 3 of the Agreement, entitled "**IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**," articulates the consequences of late payments and non-payment. Among other things, this provision warns that the creditor may repossess the vehicle, commence a collection action and recover reasonable costs and attorneys' fees from the consumer. Id. § 3(c)-(d). In addition, this section explains how a borrower can regain possession if the vehicle is repossessed:

> **How you can get the vehicle back if we take it.** If we repossess the vehicle you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

Id. § 3(e). The Agreement also expressly notifies the consumer—in capitalized lettering—to read the document and to indicate that the consumer has read it (including the arbitration clause), by signing the Agreement immediately below this clause:

> YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, <u>INCLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE</u>, BEFORE SIGNING

BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Id. at 1 (emphasis added).

The Agreement contains an arbitration clause, which is set forth in a text box (i.e., text surrounded by a border) that appears on the bottom of the second page (reverse side) of the Agreement. The clause states, in relevant part:

**ARBITRATION CLAUSE**

**PLEASE REVIEW · IMPORTANT · AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. <u>IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS</u>.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT AND THAT OTHER RIGHTS YOU AND WE WOULD HAVE MAY NOT BE AVAILABLE IN AN ARBITRATION.

Id. at 2 (emphasis added).

### 3. Repossession of Mr. Cardenas' Car

After Plaintiff executed the Agreement, the dealership assigned the contract to AmeriCredit. Plaintiff defaulted on his payments, and on January 12, 2007, AmeriCredit repossessed Cardenas' vehicle. On January 16, 2007, AmeriCredit sent Cardenas a "Notice of Our Plan to Sell Property" ("Notice"), which informed him of AmeriCredit's intention to sell his vehicle. The vehicle was subsequently sold and on March 6, 2007. Thereafter, AmeriCredit informed Cardenas that his car had been sold for $12,000, but that he still owed them a deficiency balance of $12,733.85 (i.e., the amount owed on his loan less the amount recovered from the sale of the car). Mr. Cardenas paid only part of the deficiency balance, and AmeriCredit later reported Cardenas' deficiency to credit bureaus.

**B. PROCEDURAL HISTORY**

On October 7, 2009, Plaintiff filed a class action complaint in San Francisco County Superior Court against AmeriCredit, alleging claims for (1) violation of the UCL, which, in turn, is predicated on a violation of Rees-Levering Automobile Sales Finance Act, Cal.Civ.Code § 2981, et seq., and (2) for declaratory relief. On October 19, 2010, AmeriCredit filed a notice of removal under the Class Action Fairness Act. See 28 U.S.C. §§ 1332(d), 1453(b). Subsequently, AmeriCredit filed the instant motion to compel arbitration and dismiss, or alternatively, to stay on the grounds that Plaintiff's claims are subject to the arbitration clause set forth in the Agreement. Plaintiffs counter that arbitration clause is not enforceable, inter alia, because it allegedly is unconscionable and because claims for injunctive relief under the UCL are not arbitrable. The motion has been fully briefed and is now ripe for adjudication.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), any party bound by an arbitration agreement that falls within the scope of the FAA may bring a petition in federal district court to compel arbitration. 9 U.S.C. § 4. When faced with a petition to compel arbitration, the district court's role is a discrete and narrow one. "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)) (emphasis added). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. … If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Id. "[A]ll doubts are to be resolved in favor of arbitrability."

**III. DISCUSSION**

    **A. UNCONSCIONABILITY**

"California law, like federal law, favors enforcement of valid arbitration agreements." See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 97 (2000); Carmack v. Chase Manhattan Bank (USA), 521 F. Supp. 2d 1017, 1025 (N.D. Cal. 2007) ("Federal law and the Federal Arbitration Act evince a strong presumption in favor of arbitration"). "[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable . . . ." Armendariz, 24 Cal.4th at 98. "An agreement to arbitrate is enforceable unless a recognized contract defense, such as unconscionability, exists." Szetela v. Discover Bank, 97 Cal.App.4th 1094, 1099 (2002); accord Omstead v. Dell, Inc., 594 F.3d 1081, 1085 (9th Cir. 2010). "[T]he party opposing arbitration [] has the burden of proving the arbitration provision is unconscionable." Id.

"Under California law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable." Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976, 981-82 (9th Cir. 2007). The procedural element focuses on oppression and surprise due to unequal bargaining power, while the substantive element is satisfied where the results are overly harsh or one-sided. Discover Bank v. Superior Court, 36 Cal.4th 148, 160 (2005). The procedural and substantive elements operate on a sliding scale where a strong showing of one permits a lesser showing of the other. Armendariz, 24 Cal.4th at 114. Nonetheless, both elements must be present in order for an arbitration provision to be deemed unconscionable. Id.

    **1. Procedural Unconscionability**

Plaintiffs contend that the arbitration clause is procedurally unconscionable because it is a contract of adhesion. Pls.' Opp'n at 14. "[A] contract of adhesion under California law is a standardized contract imposed on the subscribing party without an opportunity to negotiate the terms." Laster, 584 F.3d at 854-55. The mere fact that a contract is presented on a standardized form, however, does not mean that the agreement is one of adhesion. Crippen v. Central Valley RV Outlet, Inc., 124 Cal.App.4th 1159, 1165 (2004).

- 6 -

1  "Rather, procedural unconscionability focuses on the manner in which the disputed clause
2  is presented to the party in the weaker bargaining position.  When the weaker party is
3  presented the clause and told to 'take it or leave it' without the opportunity for meaningful
4  negotiation, oppression, and therefore procedural unconscionability, are present."  Id.
5  (internal quotations and alterations omitted).

6  Here, Plaintiffs assert that the Agreement is adhesive because (1) the Agreement was
7  written in English, even though he was unable to speak or read much English; (2) the dealer
8  told him to sign "here, here and here"; (3) the dealer did not tell him about the arbitration
9  clause and did not turn the Agreement over to show him the clause; and (4) the dealer
10  "withheld" the Spanish translation "until the deal was done."  Pls.' Opp'n at 14; Cardenas
11  Decl. ¶¶ 3-8.  These facts do not show that Cardenas lacked bargaining power.

12  As a threshold matter, Mr. Cardenas could have left the dealership or asked for
13  assistance from a Spanish translator if he truly felt uncomfortable about signing a document
14  that he did not read or fully understand.  There is no evidence that he availed himself of
15  either option.  Moreover, Cardenas acknowledges in his declaration that a Spanish-speaking
16  salesman was available at the dealership, and that he, in fact, was initially assisted by that
17  individual.  Cardenas Decl. ¶ 2.  Although Plaintiffs assert that the "finance guy" only
18  spoke English, nowhere in Mr. Cardenas' declaration does he state that he sought a
19  translator or asked for the Spanish-speaking salesman to be present.  In addition, although
20  Mr. Cardenas received a Spanish language version of the Agreement after he "bought the
21  car," he does not allege that he objected to its terms once he had an opportunity to read it.
22  Id. ¶ 8.  The fact that there may have been some language barriers is insufficient, under the
23  fact presented, to create a material issue of fact regarding procedural unconscionability.
24  See A & M Produce Co. v. FMC Corp., 135 Cal.App.3d 473, 486 (1982) ("Of course the
25  mere fact that a contract term is not read or understood by the non-drafting party or that the
26  drafting party occupies a superior bargaining position will not authorize a court to refuse to
27  enforce the contract").

28

Next, Plaintiffs contend that the cost of the arbitration renders the arbitration clause unenforceable. Pls.' Opp'n at 15. An arbitration clause that employs a prohibitively expensive arbitration process may be unconscionable. See Parada v. Superior Court, 176 Cal.App.4th 1554, 1578 (2009) ("While arbitration may be within the reasonable expectations of consumers, a process that builds prohibitively expensive fees into the arbitration process is not"). Where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000).

In this case, Plaintiffs acknowledge that the Agreement requires AmeriCredit to advance $1,500 for the cost of the arbitration, but argues that the cost for a one-day arbitration will be at least $7,300. Pls.' Opp'n at 15-16; Brewer Decl. ¶ 10. Though acknowledging that such fee applies specifically to commercial (as opposed to consumer) arbitrations, Plaintiffs argue that the American Arbitration Association ("AAA") informed them that such fee also applies to their case. As support for this proposition, one of Plaintiffs' attorneys states in her declaration that on an unspecified date, she spoke with Dwight James at the AAA's regional office in San Francisco who allegedly told her that AAA's Commercial Arbitration Rules govern a consumer claim where declaratory and injunctive relief is sought. Brewer Decl. ¶¶ 5-6. Setting aside that counsel's statements of what Mr. James allegedly advised are inadmissible hearsay, Fed.R.Evid. 802, Plaintiffs do not identify Mr. James' role at JAMS or otherwise provide any foundational facts to establish his competence to opine on whether or not AAA's commercial rules would apply to Plaintiffs' claims in this case.

The above notwithstanding, even if AAA's commercial rules and fees applied, Plaintiffs ignore that AAA is not the only available provider of arbitration services.[2] The

---

[2] The arbitration clause states that the customer may choose the following as an arbitrator: (1) the National Arbitration Forum ("NAF"); (2) the AAA; or (3) "any other organization that that you may choose subject to our approval." Supp. Paterson Decl. Ex.

cost to conduct a consumer arbitration before JAMS, which is mandated pursuant to an arbitration clause that is "systematically" included in its agreements with consumers, is only $250.  McClean Decl. Ex. C, Docket 25-3.  In addition, arbitrations ordered by this Court may be referred to an arbitrator at a cost of $250 per day.  ADR L.R. 4-3(a), (b).  Given that *AmeriCredit* is required to advance the cost of the arbitration in an amount of up to $1,500, Plaintiffs cannot legitimately contend that that the cost of the arbitration is prohibitively expensive.  See Green Tree Fin. Corp.-Alabama, 531 U.S. at 92.

### 2. Substantive Unconscionability

"Substantive unconscionability addresses the fairness of the term in dispute." Szetela, 97 Cal.App.4th at 1100.  Plaintiffs contend that the provision in the Agreement in which Mr. Cardenas waived his right to bring a class action, i.e., a class action waiver, renders the arbitration clause substantively unconscionable because it only serves to benefit AmeriCredit.  Pls.' Opp'n at 17-18.[3]  The California Supreme Court's decision in Discover Bank sets forth specific standards to determine whether a class action waiver provision is unconscionable.  Laster v. AT&T Mobility, LLC, 584 F.3d 849, 854 (9th Cir. 2009), cert. granted sub nom., AT&T Mobility LLC v. Concepcion, 130 S.Ct. 3322 (May 24, 2010).  Specifically, "class action waivers are unconscionable under California law if (1) the waiver is found in a consumer contract of adhesion, (2) the contractual setting is one in which "disputes between the contracting parties predictably involve small amounts of damages, and (3) it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." Omstead, 594 F.3d at 1086 n.3 (citing Discover Bank).  "The rule announced in Discover Bank is simply a refinement of the unconscionability analysis

---

A.  According to Plaintiffs, and AmeriCredit does not dispute, that NAF is no longer in business.

[3] The provision at issues states that:  "Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action."  Supp. Paterson Decl. Ex. A.

- 9 -

applicable to contracts generally in California."  Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976, 987 (9th Cir. 2007).

### a) Contract of Adhesion

As discussed above, the Court finds no merit to Plaintiffs' contention that the arbitration clause constitutes a contract of adhesion.  Plaintiff therefore cannot meet the first requirement for establishing substantively unconscionability.

### b) Predictably Small Amount of Damages

The second prong of the Discover Bank test considers whether the "disputes between the contracting parties predictably involve small amounts of damages." Omstead, 594 F.3d at 1086 n.3.  If the individual claims are small, it is unlikely that any individual plaintiff would file suit against a company which had violated the law, effectively exculpating it from liability.  See Arguelles-Romero v. Superior Court, 184 Cal.App.4th 825, 842 (2010).  There is no bright-line test for determining what constitutes "a predictably small amount of damages" within the meaning of Discovery Bank.  In that case, $29 in fees were at issue.  Discover Bank, 36 Cal.4th at 154.  In contrast, the court in Cohen v. DirecTV, Inc., 142 Cal.App.4th 1442, 1452 (2006) held that hidden fees in a television service contract in the amount of $1,000 met the Discover Bank standard.  Notably, at least one court has concluded that the $1,000 figure in Cohen represents the "outer limit" of what could be considered "small."  Dalie v. Pulte Home Corp., 636 F. Supp. 2d 1025, 1029 (E.D. Cal. 2009).

Here, the amount of Cardenas' deficiency is $12,500, and the typical deficiency balance is over $11,000—both figures well exceeding the amount of damages involved in Cohen.  Paterson Decl. ¶ 8.  In their opposition, Plaintiffs completely sidestep the issue and argue that it is not the actual amount of damages involved that is germane, but rather, "whether consumers who are victims of AmeriCredit's practices will litigate individually." Pls.' Opp'n at 21. Ostensibly to show that individuals will not sue AmeriCredit on an

1  individual basis, Plaintiffs proffer the declaration of Kathryn Alvarado.[4]  Ms. Alvarado
2  avers that she was involved in a dispute similar to Mr. Cardenas; namely, that a credit union
3  repossessed and sold her vehicle following her failure to make the requisite monthly
4  payments, and then sued her to recover the balance of the loan remaining following the sale
5  of the vehicle.  Alvarado Decl. ¶¶ 2-3.  Ms. Alvarado claims that she spoke to five attorneys
6  in the area around Barstow, California, but that none was "interested" in her case.  Id. ¶ 5.[5]
7     Plaintiffs contend that Ms. Alvarado's declaration proves "how difficult it is to find
8  a lawyer to help with these deficiency cases."  Id. at 22.  The Court is not persuaded.
9  Setting aside that Ms. Alvarado is not a customer of AmeriCredit, she fails to provide any
10 information regarding the terms and conditions of the financing agreement underlying her
11 dispute nor does she provide any information regarding the claims and defenses involved in
12 her dispute with the unidentified credit union.  Absent such information, Ms. Alvarado's
13 individual experience is not probative of whether Plaintiffs or class members would pursue
14 their claim on an individual, as opposed to a class, basis.[6]

### c) Scheme to Cheat Consumers

16 The third and final prong of the Discover Bank test requires Plaintiffs to show that
17 AmeriCredit has carried out a scheme to deliberately cheat large numbers of consumers out
18 of individually small sums of money.  36 Cal.4th at 162-63.  Plaintiffs fail to meet this
19 burden.  As an initial matter, AmeriCredit is merely an assignee, as opposed to the
20 originator, of the Agreement.  Paterson Decl. ¶ 3.  Thus, at the time Cardenas executed the
21 Agreement, AmeriCredit was not involved in the transaction and obviously stood to gain no

---

[4] AmeriCredit has filed a motion to strike her declaration on the grounds of relevance, hearsay and as improper expert opinion.  (Docket 27.)  Since the Court is rejecting Plaintiffs' unconscionability argument notwithstanding her declaration, the motion to strike is denied as moot.

[5] In actuality, at least one attorney was willing to review her case in exchange for a $5,000 retainer, which she apparently was unwilling to pay.  See Alvarado Decl. ¶ 5.

[6] Citing Parada, 176 Cal.App.4th 1554, Plaintiffs contend that class action waivers have been invalidated in cases involving losses in excess of $350,000.  Pls.' Opp'n at 21.  However, Parada did not involve a class action waiver and did not address the Discover Bank test.

unfair benefit based on its terms. Nor have Plaintiffs presented any evidence that AmeriCredit's subsequent acquisition of Cardenas' loan is part of a scheme to defraud consumers. Indeed, the uncontroverted evidence before the Court establishes that since March 2005, approximately <u>forty percent</u> of the contracts in California AmeriCredit has accepted for assignment do <u>not</u> contain an arbitration provision or class action waiver. Moody Decl. ¶ 2. Tellingly, Plaintiffs does not address any of these key points in their opposition. <u>See</u> Pls.' Opp'n at 22.

In sum, Plaintiffs have not persuaded the Court that the arbitration clause at issue is either procedurally or substantively unconscionable.

**B.   ARBITRABILITY OF CLAIM FOR INJUNCTIVE RELIEF UNDER THE UCL**

Alternatively, Plaintiffs argue that AmeriCredit's motion to compel arbitration should be denied because they are only seeking injunctive relief under the UCL, which they assert is not arbitrable under <u>Broughton v. Cigna Healthplans of Cal.</u>, 21 Cal.4th 1066, 1082 (1999) and <u>Cruz v. PacifiCare Health Sys.</u>, 30 Cal.4th 303, 316 (2003). Pls.' Opp'n at 6-8. In <u>Broughton</u>, the California Supreme Court held that claims for injunctive relief under the Consumers Legal Remedies Act ("CLRA"), Cal.Civ.Code § 1750, et seq., were not subject to arbitration. The court predicated its decision on the discrete purposes underlying an arbitration, as opposed to a claim for injunctive relief under the CLRA. Specifically, whereas "the purpose of arbitration is to voluntarily resolve private disputes in an expeditious and efficient manner, . . . the evident purpose of the injunctive relief provision of the CLRA is not to resolve a private dispute <u>but to remedy a public wrong</u>." <u>Id.</u> (emphasis added). Given that distinction, the court concluded that compelling arbitration of a CLRA injunctive claim brought on behalf of the public could not be reconciled with the purposes of statute:

> In short, there are two factors taken in combination that make for an 'inherent conflict' between arbitration and the underlying purpose of the CLRA's injunctive relief remedy. <u>First</u>, that relief is for the benefit of the general public rather than the party bringing the action. [] <u>Second</u>, the judicial forum has significant institutional advantages over arbitration in administering a public injunctive remedy, which as a

>consequence will likely lead to the diminution or frustration of the public benefit if the remedy is entrusted to arbitrators.

Id. at 1082 (emphasis added).  The court concluded that "[g]iven this inherent conflict, [it] will presume, absent indications to the contrary, that the Legislature did not intend that the injunctive relief claims be arbitrated."  Id. at 1082.

In Cruz, the California Supreme Court extended Broughton to claims for injunctive relief under the UCL, to the extent they are "designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff."  30 Cal.4th at 315.  In reaching its decision, the court noted "[t]he UCL is intended to protect competitors as well as consumers from unfair practices," and therefore, the injunctive relief may serve different purposes depending upon the nature of the dispute.  Id.  In the case of business dispute, the UCL may be "used primarily to redress injuries to competing businesses and only incidentally for the public benefit."  Id.   Under the facts presented, however, the court found that the relief being sought was "designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff."  Id.[7]  Therefore, as in Broughton, an "inherent conflict" existed between the purposes of arbitration, which is focused on private disputes, and the UCL, which is aimed at providing a remedy for a public wrong.  Id.

AmeriCredit contends, without citation to any relevant legal authority, that a "public injunction" is no longer available as a remedy following the passage of Proposition 64, and therefore, neither Boughton nor Cruz forecloses the arbitration of Plaintiffs' claims.  Def.'s Reply at 10.  This contention is misplaced.  Prior to 2004, a UCL claim could be brought by a private individual "acting for the interests of itself, its members or the general public."  In 2004, however, California voters passed Proposition 64, which was directed at

---

[7] The plaintiff in Cruz alleged that the defendant violated the UCL by discouraging medical providers from delivering services to patients enrolled in defendant's health plans, and sought an injunction enjoining defendant from engaging in such conduct.  30 Cal. 4th at 308.

"unscrupulous lawyers who exploited the generous standing requirement of the UCL to file 'shakedown' suits to extort money from small businesses." In re Tobacco II Cases, 46 Cal.4th 298, 316 (2009). To address this concern, Proposition 64 amended the standing requirement, as set forth in Business and Professions Code section 17204, by eliminating the right of a person "acting for the interests of itself, its members or the general public" to bring a UCL suit. See Paulus v. Bob Lynch Ford, Inc., 139 Cal.App.4th 659, 677 n.13 (2006) (citations omitted). Instead, standing under the UCL is now limited to persons who have "suffered injury in fact and has lost money or property as a result of such unfair competition.'" Paulus v. Bob Lynch Ford, Inc., 139 Cal.App.4th 659, 677 n.13 (2006) (citations omitted). The "intent of California voters [in passing Proposition 64] was to limit such abuses by 'prohibiting private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact.'" Id. at 316-17 (citation omitted).

While Proposition 64 heightened the standing requirements to bring a UCL claim, it did *not* alter any of the remedies available under the UCL. Id. at 319. Notably, notwithstanding the passage of Proposition 64, both the Ninth Circuit and at least two other judges in this District have cited both Broughton and Cruz for the proposition that claims for injunctive relief under the UCL cannot be arbitrated. See Davis v. O'Melveny & Myers, 485 F.3d 1066, 1080 (9th Cir. 2007) ("Actions seeking . . . [public] injunctions cannot be subject to arbitration even under a valid arbitration clause.") (citing Broughton and Cruz); accord Kilgore v. Keybank, Nat'l Ass'n, No. 08-02958 TEH, 2009 WL 1975271, at *6 (N.D. Cal. July 8, 2009) (finding that UCL claims for injunctive relief not subject to arbitration clause); Ramirez v. Cintas Corp., No. 04-00281 JSW, 2005 WL 2894628, at *4 (N.D. Cal. Nov. 2, 2005) (same). Thus, the Court rejects AmeriCredit's assertion that Proposition 64 renders Broughton or Cruz inapt.

Equally without merit is AmeriCredit's ancillary contention that the injunction sought by Plaintiffs under the UCL is not intended to benefit the public. Def.'s Reply at 10-11. In particular, AmeriCredit asserts that the requested relief is "victim specific," as it only benefits class members who received a Notice from AmeriCredit following the

1 repossession of their vehicle, and against whom AmeriCredit has asserted a deficiency
2 claim.  Id.  The flaw in this argument is that it ignores the salient inquiry framed by the
3 Cruz court; namely, whether the relief being sought is "designed to prevent further harm to
4 the public at large rather than to redress or prevent injury to a plaintiff." 30 Cal.4th at 315
5 (emphasis added).  Here, the Complaint alleges that the Notices issued by AmeriCredit are
6 "defective" in that they fail to accurately inform consumers of their legal rights and
7 obligations.  See Compl. ¶ 31. As relief, they seek an order enjoining AmeriCredit from
8 continuing in this allegedly improper practice.  See id. at 15 and ¶ 64.  Thus, it is evident
9 that the relief being sought is not limited to Plaintiffs individually, but rather, extends to
10 members of the public impacted by AmeriCredit's allegedly unfair business practices.
11 Indeed, under AmeriCredit's reasoning, a UCL claim for injunctive relief would never be
12 considered an injunction for the benefit of the public because the scope of relief would
13 always be defined by the class.  The Court is aware of no authority to support such an
14 expansive proposition of law.

**IV.    CONCLUSION**

The Court concludes that the arbitration clause contained in the Installment Agreement is neither procedurally nor substantively unconscionable.  Nevertheless, Plaintiffs cannot be compelled to arbitrate their claim for injunctive relief under the UCL. Accordingly,

IT IS HEREBY ORDERED THAT:

1.   Defendant's motion to compel arbitration (Docket 9) is DENIED.

2.   Defendant's motion to strike the declaration of Kathrn Alvarado (Docket 27) is DENIED as moot.

3.   The parties shall appear for a telephonic Case Management Conference on **December 2, 2010 at 2:30 p.m.** The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference.  The joint statement shall comply with the Standing Order for All Judges of the Northern District of California

1 and the Standing Order of this Court.  Plaintiffs shall be responsible for filing the statement
2 as well as for arranging the conference call.  All parties shall be on the line and shall call
3 (510) 637-3559 at the above indicated date and time.
4     IT IS SO ORDERED.
5 Dated: September 13, 2010                              _____
6                                                        SAUNDRA BROWN ARMSTRONG
                                                         United States District Judge